**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALAMEEN BYERS,** | : | |
| **Plaintiff** | : | **No. 1:25-cv-00997** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **EG AMERICA,** | : | **(Magistrate Judge Schwab)** |
| **Defendant** | : | |

**ORDER**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

On June 3, 2025, pro se Plaintiff Alameen Byers ("Plaintiff") filed a complaint against Defendant EG America ("Defendant" or "Turkey Hill"). (Doc. No. 1.) After Defendant filed a motion to dismiss (Doc. No. 7), Plaintiff filed an amended complaint on November 26, 2025 (Doc. No. 23). Plaintiff's amended complaint asserts the following claims: (1) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681m (Count I); (2) violation of Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa. C.S. § 9125 (Count II); (3) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S. Code § 1981 ("Section 1981"), and the Pennsylvania Humans Relations Act ("PHRA") (Counts VI and VII); (4) race discrimination in violation of Title VII, Section 1981, and the PHRA (Counts III and V); and (5) sex discrimination in violation of Title VII and the PHRA (Counts IV and V). (Id.) On December 9, 2025, Defendant filed a motion to dismiss all claims asserted in Plaintiff's amended complaint, with the exception of Plaintiff's race discrimination claims under Section 1981 and Title VII. (Doc. No. 25). The motion to dismiss was fully briefed. (Doc. Nos. 26, 27, 29, 31.)

Now before the Court is Magistrate Judge Schwab's July 7, 2026 Report and Recommendation recommending that the Court grant in part and deny in part Defendant's

motion to dismiss Plaintiff's amended complaint. (Doc. No. 32.) Specifically, Magistrate Judge Schwab recommends that the Court dismiss Plaintiff's retaliation claims under Title VII, § 1981, and the PHRA (Counts VI and VII) but otherwise deny Defendant's motion, and recommends that the Court grant Plaintiff leave to amend his complaint. (Id. at 27–28.) Defendant filed an objection to Magistrate Judge Schwab's Report and Recommendation (Doc. No. 33) and a brief in support (Doc. No. 33-1). Defendant objects as follows:

> Turkey Hill objects to the portion of the Magistrate Judge's R&R related to the denial of its Motion to Dismiss on Plaintiff's: (1) [FCRA] claim; (2) [CHRIA] claim; and (3) the [Title VII and PHRA] sex discrimination claims.

(Doc. No. 33 at 1.)

Magistrate Judge Schwab articulates the relevant factual allegations in Plaintiff's amended complaint:

> Turkey Hill is a convenience store retailer. Id. ¶ 1. Byers, an African American black man, applied for the position of part-time Retail Sales Associate at Turkey Hill's Steelton location in July 2023. Id. ¶ 2. On July 14, 2023, Byers was interviewed for the position by Crystal Kershner ("Kershner"), the store manager, and a white female. Id. ¶¶ 3–4. Following the interview, Byers received a conditional offer of employment subject to a background check. … He then provided Turkey Hill with written authorization to obtain his consumer report and conduct a criminal background check. Id.
>
> …
>
> On August 1, 2023, Byers received a pre-adverse action notice via email from Sterling. Id. ¶ 26. "Turkey Hill indicated that, based on all or parts of [Byers's] consumer report, they were considering taking an adverse action." Id. ¶ 27. Per Byers, he had the following charges on his record: battery against a pregnant woman, battery, and criminal trespass. Id. at 5. Byers claims the charges were "arrest records, non-convictions jointly set for pre-trial diversion" and "[w]ithout any pending proceedings[] or formal arraignment." Id. ¶ 28. The preadverse action notice requested Byers to "[p]rovide any additional information, such as evidence of inaccuracy, rehabilitation, or mitigating circumstances that could help evaluate [his] fitness for the position." Id. at 6. It further noted that "[w]ithin 10 days we will make our hiring decision based on the information available to us." Id.

> About two to three hours later, Byers received a call from Kershner informing him that he was "suspended without pay and instructed [him to] not report to work due to the findings of [his] background report." Id. ¶ 29. … Byers claims Turkey Hill failed to provide "a reasonable period of time to respond to the Pre-Adverse Action Notice before taking adverse action" in violation of the FCRA. Id. ¶ 82.
>
> …
>
> On October 11, 2023, Byers filed an internal discrimination complaint with Turkey Hill's ethics department for violation of the CHRIA. Id. ¶¶ 50–51. Daisy Germoso ("Germoso"), Turkey Hill's employee relations coordinator,[] responded to Byers's complaint by "sustaining [his] unpaid suspension, without addressing [his] dispute, evidence of rehabilitation, or legal protection under Pennsylvania law." Id. ¶¶ 52, 54.
>
> …
>
> On May 20, 2024, Byers filed an initial charge of employment discrimination with the EEOC. Doc. 23-1 at 3. On November 27, 2024,[1] Byers amended his charge to include claims of retaliation and sex discrimination. Doc. 23 ¶ 75.
>
> Byers claims his suspension and termination was in violation of the CHRIA given that Turkey Hill relied on "prohibited non-conviction data to make an adverse employment decision." Id. ¶ 90. Moreover, because Turkey Hill's Steelton location was "female dominated," he was qualified for the position, the management team enforcing the adverse employment decisions were female, his position was filled by an individual of a different race, and the justification for the adverse employment decision shifted from his criminal history to job abandonment, Byers alleges that he was suspended and terminated because he is an African American black male. Id. ¶¶ 95–115.

(Doc. No. 32 at 6–11.)

Turning first to Plaintiff's FCRA claim, Magistrate Judge Schwab recommends denying Defendant's motion to dismiss this claim for the following reasons:

> Byers filed his initial complaint on June 3, 2025. Doc. 1. On November 26, 2025, Byers filed an amended complaint raising a new claim under the FCRA arising from the alleged procedural deficiencies surrounding his August 1, 2023, suspension. Doc. 23. Accordingly, Byers's FCRA claim accrued on August 1,

[1] As discussed, <u>infra</u>, the Court notes that Byers amended his charge on December 20, 2024, not November 27, 2024.

> 2025. Such claim will be considered timely only if the amended complaint relates back to June 3, 2025, when the initial complaint was filed.
>
> . . .
>
> Here, Byers's initial complaint and amended complaint both allege that he (1) received a pre-adverse action notice from the consumer reporting agency on August 1, 2023, (2) he was suspended without pay on the same day due to the findings from his background report, and (3) that Turkey Hill's employee relations coordinator informed Byers of his rights under the FCRA in relation to the pre-adverse action notice process. Doc. 1 ¶¶ 24, 30, 56; Doc. 23 ¶¶ 26, 29, 55. Accordingly, the claims in the amended complaint and the claims in the initial complaint arise from a common core of operative facts. Thus, we do not recommend dismissing Byers's FCRA claim based on the statute of limitations.

(Id. at 13–14.)

Defendant objects to this recommendation, arguing that:

> the First Complaint referenced the background-check process and recited Plaintiff's receipt of pre-adverse and adverse action notices; however, Plaintiff included those allegations solely as part of the factual chronology leading to his alleged termination, which did not put Turkey Hill on notice of any potential FCRA claim. Nowhere in the First Complaint did Plaintiff suggest that any aspect of Turkey Hill's FCRA compliance was deficient, unlawful, or otherwise independently actionable. The First Complaint did not assert an FCRA count, identify any allegedly deficient notice, challenge the timing of Turkey Hill's communications, or allege that Plaintiff was denied a reasonable opportunity to respond before an employment decision was made. In fact, the only reference to the FCRA in the First Complaint was Plaintiff's allegation that "Ms. Germoso informed [Plaintiff] of [his] rights under the FCRA in regard to the pre-adverse and adverse action process."
>
> . . .
>
> The Amended Complaint, by contrast, introduces an entirely new legal theory and a host of new allegations directed specifically at Turkey Hill's purported FCRA violations. For the first time, Plaintiff alleges that Turkey Hill failed to provide a "reasonable period of time [for him] to respond to the pre-adverse action notice," asserts that "a window of two to three hours is objectively insufficient for a consumer to review a report" and exercise his rights, and alleges that Turkey Hill failed "to issue the mandatory Post-Adverse Action Notice" following the termination of his employment.
>
> . . .

> As in [Glover v. F.D.I.C., 698 F.3d 139 (3d Cir. 2012)], the allegations in the First Complaint that the Magistrate Judge relied upon were "entirely peripheral" and "gave no suggestion" that Plaintiff believed Turkey Hill was legally culpable based on the background-check procedures themselves. See Glover, 698 F.3d at 148. In Glover, the court held that relation back was inappropriate where the allegations supporting the amended claim were peripheral to the complaint's core allegations, and even under the most generous reading, did not suggest that the newly implicated defendants were responsible for the challenged conduct. Id. The same is true here. The First Complaint challenged Turkey Hill's substantive employment decision (termination) and alleged discrimination and retaliation; it did not challenge the adequacy of Turkey Hill's compliance with the FCRA's pre-adverse action requirements.

(Doc. No. 33-1 at 7–11.)

Upon careful consideration of Magistrate Judge Schwab's Report and Recommendation, Defendant's objection, the parties' briefs, Plaintiff's complaint and amended complaint, and the applicable law, the Court will sustain Defendant's objection because it did not have fair notice of the FCRA claim, and therefore the Court declines to adopt Magistrate Judge Schwab's recommendation as to this claim. As articulated by Magistrate Judge Schwab, above, "[w]here an amendment [to a pleading] relates back [to the original pleading], Rule 15(c) allows a plaintiff to sidestep an otherwise-applicable statute of limitations." See Glover, 698 F.3d at 145. "[I]t is well-established that the touchstone for relation back is fair notice" and "amendments that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated" with caution. Id. (internal quotations omitted). The Court is persuaded that here, the FCRA claim in the amended complaint alters the legal theory and amounts to a new and unanticipated claim. Defendant is correct that the thrust of the original complaint was "Turkey Hill's substantive employment decision (termination) and alleged discrimination and retaliation," and the complaint gave no indication of an intention to pursue an FCRA claim. (Doc. No. 33-1 at 11.) As Magistrate Judge Schwab articulates, this "claim will be considered timely only if the

amended complaint relates back to . . . the initial complaint." (Doc. No. 32 at 13.) Because the Court finds that it does not, Plaintiff's FCRA claim is time-barred, and the Court will grant Defendant's motion to dismiss with respect to this claim.

Defendant next objects to Magistrate Judge Schwab's recommendation with respect to Plaintiff's CHRIA claim. Magistrate Judge Schwab articulates the relevant law:

> Under the CHRIA, an employer may use an applicant's criminal history record "for the purpose of deciding whether or not to hire the applicant." 18 Pa. Cons. 14 Stat. § 9125(a). "[T]his section allows employers to consider, when relevant in hiring decisions, convictions but not arrests." Foxworth v. Pa. State Police, 228 F. App'x 151, 155 (3d Cir. 2007) (citing Tilson v. Sch. Dist. of Phila., No. 89-1923, 1990 WL 98932, at *4 (E.D. Pa. July 13, 1990), aff'd, 932 F.2d 961 (3d Cir. 1991)).

(Doc. No. 32 at 14–15.) Magistrate Judge Schwab recommends denying Defendant's motion to dismiss this claim for the following reasons:

> Turkey Hill contends Byers fails to state a CHRIA claim because his suspension and termination "concern post-hiring adverse employment actions," falling "outside the scope of the CHRIA." Doc. 27 at 14. In his brief in opposition, Byers maintains that his suspension and termination "were executed during the pre-employment screening stage of the Company's hiring process." Doc. 29 at 6. At this juncture, we agree with Byers.
>
> Here, Byers alleges that he was offered employment with Turkey Hill "on a contingent basis" and that he provided authorization for the completion of a criminal background check. Doc. 23 ¶ 2. A few weeks after this offer, Byers alleges he received a pre-adverse action notice which asserted, "[w]ithin 10 days we will make our hiring determination based on the information currently available to us." Id. at 5–6. That same day, Byers claims he was "suspended without pay and instructed . . . not to report to work due to the findings of [his] background report." Id. ¶ 29. Byers further claims that his employment was terminated five months after his suspension was implemented based on his arrest records. Id. ¶ 92. Indeed, Byers had not completed a single shift during his short tenure at Turkey Hill. Construing these allegations as true, which we must do at this stage, we find that Byers has alleged sufficient facts to plausibly raise a CHRIA claim.

(Id. at 15–16.)

Defendant objects, arguing that:

> The CHRIA permits employers to consider criminal history information only "for the purpose of deciding whether or not to hire the applicant[.]" 18 Pa. C.S. § 9125(a). The statute applies only to hiring decisions involving "applicants." The General Assembly did not extend the statute to all adverse employment actions, nor did it prohibit employers from taking later employment actions based upon information obtained after an individual is hired.
>
> . . .
>
> Although the Magistrate Judge emphasized that "Byers had not completed a single shift during his short tenure at Turkey Hill," (ECF 32, p. 16), the CHRIA does not contain an exception for employees who have worked only one shift, or even no shifts at all. Nor does the statute create a category of "quasi-applicants" who remain covered after being hired. Once Turkey Hill hired Plaintiff, he was not an "applicant" within the meaning of § 9125, and the CHRIA no longer applied to him.

(Doc. No. 33-1 at 12–14.)

Upon careful consideration of Magistrate Judge Schwab's Report and Recommendation, Defendant's objection, the parties' briefs, Plaintiff's complaint and amended complaint, and the applicable law, the Court will overrule Defendant's objection and adopt Magistrate Judge Schwab's recommendation as to Plaintiff's CHRIA claim. Multiple courts have found that, where employment is "subject to a background check," then subsequent action "constitutes a hiring decision, drawing it within the scope of the CHRIA." See Negron v. Sch. Dist. of Philadelphia, 994 F. Supp. 2d 663, 667 (E.D. Pa. 2014); see also Medina v. C&S Wholesale Grocers, Inc., No. 17-cv-04547, 2018 WL 1872739, at *3 (E.D. Pa. Apr. 19, 2018). Plaintiff asserts that he was "offered employment with Turkey Hill on a contingent basis and that he provided authorization for the completion of a criminal background check." (Doc. No. 32 at 15.) At this stage, the Court "must accept all facts alleged in the complaint as true and construe the complaint in the light most favorable to the nonmoving party." See Krieger, 890 F.3d at 437. Doing so, the Court finds that Plaintiff plausibly alleges that the contested action "constitute[d] a hiring decision" in accordance with Negron, and therefore the Court finds that Plaintiff's CHRIA

claim does not warrant dismissal. See Negron, 994 F. Supp. 2d at 667. The Court turns to Defendant's final objection.

Lastly, Defendant objects to two of Magistrate Judge Schwab's recommendations with respect to Plaintiff's sex discrimination claims, arguing: (1) that the Title VII sex discrimination claim is untimely; and (2) that Plaintiff's PHRA sex discrimination claim does not relate back to the original EEOC charge.

The limitations periods under Title VII and the PHRA run as follows:

> "Before beginning a Title VII suit, a plaintiff must first file a timely EEOC charge." Lewis v. City of Chi., 560 U.S. 205, 210 (2010). A claimant in a deferral state, such as Pennsylvania, must file an administrative charge within 300 days after the alleged unlawful employment practice occurred. Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) … Likewise, the PHRA requires a plaintiff to file a complaint with the PHRC within 180 days of the alleged discriminatory act. 43 Pa. Stat. § 959(h). These time periods are treated as a statute of limitations. Burgh v. Borough Council of Montrose, 251 F.3d 465, 470, 475 (3d Cir. 2001).
>
> The statute of limitations is an affirmative defense and the burden of establishing its applicability rests with the defendant. Bradford-White Corp. v. Ernst & Whinney, 872 F.2d 1153, 1161 (3d Cir. 1989). A motion to dismiss may be granted on the basis of the statute of limitations only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

(Doc. No. 32 at 18–19.)

Magistrate Judge Schwab recommends denying the motion to dismiss with respect to these claims because:

> Turkey Hill asserts Byers's first charge alleged racial discrimination and was filed on October 2, 2024, exceeding the 180-day timeline under the PHRA.[] Doc. 27 at 18. However, Byers's amended complaint alleges that he was terminated on February 1, 2024, and that the EEOC received his initial charge of discrimination on May 20, 2024. Doc. 23 ¶ 71; Doc. 23-1. Accordingly, it is not clear from the face of the amended complaint that Byers's racial discrimination claim is untimely

> under the PHRA, thereby precluding the granting of Turkey Hill's motion to dismiss.
>
> Turkey Hill also argues that Byers's sex discrimination and retaliation claims are untimely under both Title VII and the PHRA because they were not raised in his initial charge. Doc. 27 at 19. As noted above, Byers was terminated on February 1, 2024, and the EEOC received his initial charge of discrimination on May 20, 2024. On November 27, 2024, Byers alleges he amended his charge to include claims of sex discrimination and retaliation. Doc. 23 ¶ 75. Because November 27, 2024, is precisely 300 days from Byers's date of termination, we find that Turkey Hill's argument fails under Title VII.
>
> Under the PHRA, Byers's additional claims of sex discrimination and retaliation would be untimely because they were filed outside of the 180-day deadline. However, a charge "may be amended to cure technical defects or omissions, to clarify or amplify allegations made therein, or to add material allegations which are related to or grow out of the subject matter of the original complaint, and these amendments shall relate back to the original filing date of the complaint." 16 Pa. Code § 42.35(b). "The relating-back provision is properly used where a plaintiff seeks to amend the Charge by naming a new legal theory based on the same facts as reported in the original Charge, not where . . . a plaintiff seeks to add entirely new facts that happened after the original Charge." Van Cleve v. Nordstrom, Inc., 64 F. Supp. 2d 459, 463 n.5 (E.D. Pa. 1999).
>
> Here, Byers's amended complaint states that he simply amended his initial charge to add retaliation and sex discrimination. Doc. 23 ¶ 75. While it appears that the added legal theories apply to the "same separation from employment already under investigation" in his initial charge, we are unable to determine this with certainty by the face of the complaint. Doc. 29 at 13. But the "Plaintiff is not required to plead around the affirmative defenses and []he may be able to overcome those defenses with evidence obtained through discovery supporting equitable tolling or relation back of h[is] amendments to the EEOC [or PHRA] charges." Difrischia v. Lutheran Seniorlife, Inc., No. 22-cv-01668, 2023 WL 2187739, at *2 (W.D. Pa. Feb. 23, 2023). Accordingly, we find dismissal on this issue would be improper at this stage.

(Doc. No. 32 at 18.)

First, as to the Title VII sex discrimination claim, Defendant asserts that "the factual premise underlying the R&R's timeliness analysis is unsupported by the FOIA record," because although the Report and Recommendation states that Plaintiff alleges he amended his

administrative charge to the EEOC on November 27, 2024, the EEOC record indicates that this in fact occurred on December 20, 2024.[2] (Doc. No. 33-1 at 16.) Therefore, Defendant asserts that:

> This error is dispositive because the R&R's conclusion that Plaintiff's Title VII sex discrimination claim is timely rests entirely on the assumption that Plaintiff amended his charge on November 27, 2024, the 300th day following his termination. Because December 20, 2024 falls outside Title VII's 300-day limitations period, Plaintiff's Title VII sex discrimination claim is untimely and must be dismissed.

(Id. at 16–17.)

Upon careful consideration of the foregoing, the Court finds that Plaintiff's Title VII sex discrimination claim is untimely. The record reflects that Plaintiff amended his administrative charge to the EEOC on December 20, 2024, see (Doc. No. 33-2 at 37), which was more than 300 days after his termination date. See Mandel, 706 F.3d at 165 (requiring claimants to file an administrative charge within 300 days). As such, the Court will sustain Defendant's objection on this point and declines to adopt the recommendation to deny Defendant's motion to dismiss this claim.

Second, Defendant objects to Magistrate Judge Schwab's conclusion that Plaintiff's sex discrimination claim under the PHRA relates back to the original EEOC charge. (Doc. No. 33-1 at 17.) Defendant argues that "Plaintiff's allegations in the Amended Complaint constitute a distinct legal theory for sex discrimination that does not relate back to the race discrimination

---

[2] Defendant correctly notes that "[o]n a Motion to Dismiss, the Court can consider EEOC materials without turning the Motion into a Motion for Summary Judgment." (Doc. No. 33-1 at 16 n.3); see Dulgiyer v. DePuy Synthes, No. 23-cv-03889, 2024 WL 944220, at *2 (E.D. Pa. Mar. 5, 2024) (stating that "courts may consider EEOC and PHRC filings and certain related documents at the motion to dismiss stage").

allegations asserted in Plaintiff's original administrative charge." (Doc. No. 33-1 at 17.)

Further, Defendant asserts:

> The PHRA permits amendments that "clarify or amplify" allegations contained in a timely filed charge or add allegations that "grow out of the subject matter of the original complaint[.]" 16 Pa. Code § 42.35(b). But, the relation-back doctrine does not apply where a claimant seeks to introduce an entirely new theory of discrimination after the applicable filing deadline has expired. Courts have declined to permit relation back where an amendment asserts a new protected classification not fairly encompassed within the original administrative charge. See, e.g., Lantz v. Hosp. of Univ. of Pennsylvania, No. 96-2671, 1996 WL 442795, at *4 (E.D. Pa. July 30, 1996).
>
> …
>
> Here, Plaintiff's original administrative charge alleged only race discrimination. (See October 2, 2024, Original Charge of Discrimination attached as Exhibit B). On December 20, 2024, he later amended that charge to add Title VII and PHRA sex discrimination claims. (See Exhibit A). Those claims involve different protected characteristics, different theories of discriminatory animus, and potentially different comparators and evidence.
>
> . . .
>
> The R&R appears to suggest that relation back may be appropriate because Plaintiff's amended charge's reference to sex discrimination relate to the same termination referenced in Plaintiff's original charge. (ECF 32, pp. 20-21). But that reasoning is too broad. If the mere fact that two claims arising from the same termination were sufficient to establish relation back, a claimant could add entirely new protected classifications after the expiration of the filing deadline so long as the claims concerned the same employment decision. That is not the purpose of the relation-back doctrine. The relevant inquiry is whether the original charge provided fair notice of the later-asserted theory of discrimination. Plaintiff's race discrimination charge did not provide notice of a sex discrimination claim.

(Id. at 17–20.)

Upon careful consideration, the Court finds that the amendment to add a charge of sex discrimination does not relate back to the initial charge of race discrimination, and thus the claim should be dismissed as untimely. The Court is persuaded that the situation is sufficiently similar

to Lantz, in which the court found that the amendment did not relate back to the original filing because "a claim of age discrimination does not logically flow from a claim of disability discrimination such that Defendants would be on notice." See Lantz, 1996 WL 442795, at *4; see also Pintor v. Port Auth. of New York & New Jersey, No. 08-cv-02138, 2009 WL 2595664, at *3 (D.N.J. Aug. 20, 2009) (finding that "numerous Circuits have refused to allow relation back in similar situations"). Therefore, the Court will sustain Defendant's objection and grant the motion to dismiss with respect to this claim.

Finally, Magistrate Judge Schwab recommends granting Byers the opportunity to file an amended complaint. (Doc. No. 32 at 25.) Because Defendant does not object to this recommendation, and noting that Plaintiff is proceeding pro se, the Court will adopt this recommendation.

**AND SO**, on this 28th day of September 2026, upon independent review of the record and applicable law, and for the foregoing reasons, **IT IS ORDERED THAT**:

1. Plaintiff's objections (Doc. No. 33) are **SUSTAINED in part and OVERRULED in part**;

2. The Court **ADOPTS IN PART** Magistrate Judge Schwab's Report and Recommendation (Doc. No. 32) insofar as:

    a. Defendant's motion to dismiss (Doc. No. 25) is **GRANTED in part and DENIED in part**, in that the following claims are **DISMISSED WITH PREJUDICE**: FCRA claim (Count I); Title VII and PHRA claims for sex discrimination (Counts IV and V); the following claims are **DISMISSED**: retaliation claims under Title VII, § 1981, and the PHRA (Counts VI and VII); the motion is otherwise **DENIED**;

3. Plaintiff may file an amended complaint within **fourteen (14) days** of the date of this Order; and

4. This case is **RECOMMITTED** to Magistrate Judge Schwab for further pretrial management.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania